

```
        IN THE CIRCUIT COURT
        FOR WASHINGTON
        COUNTY

                                    )
                                    )   CASE NO.
NANCY CLINE, et al
                                    )   21-C-02-013505
     .Plaintiffs VS.

JOHN JAMES CHRISTY, et a

        Defendants
```

The deposition of JOHN CHRISTY was taken on the 11th day of November, 2002, at approximately 10:00 a.m., at the State Farm Service Center, 118 East Oak Ridge Drive, Suite 200, Hagerstown, Maryland, before Sandra Beth Shrader, Notary Public.



**TRI-STATE REPORTERS, INC.**

43 Summit Avenue • Hagerstown, Maryland 21740 301-714-1882 • 1-800-867-9909 • FX: 301-797-7708

134[1]/₂ South Queen St. • Martinsburg, WV 25401 304-262-1900 • 1-80P-291-5423 • FX: 301-797-7708

C

1  the church board when the engine was overheating
2      to take it to the Amoco facility, correct? A.
3
4       Q.  Was it a suggestion by the board member
5     Yes.
6  specific to this particular problem, being
7  overheating, or was it more of a general premise
8  that if it's serious we want you to take it to
9  Amoco; regular routine service you can pick where
10 you take it?
11      A. It's to this particular incident with
12 the engine overheating.
13      Q. Okay. How did you notice that there was
14 a problem with the engine overheating; was it
15 the temperature light?
16      A. The temperature gauge, yes.
17      Q. How long did it last before you
18 actually did something about it?
19      A. I got it looked at probably the next
20 day.
21      Q. Okay.

        A. I mean it overheated; I parked the

```
 1   vehicle and the next day I drove it up there.
 2      Q. Who's the board member that you conferred
 3      with on this?
         A. Who was the board member?
 4
 5       Q. Yeah.  I think a couple conferred, so I
 6   don't remember exactly which one I spoke with.
 7       Q. So between the time you noticed it
 8   overheating and pulled it over and the time you
 9   took it to the Amoco you had a conversation
10   with...
         A. Yeah, by phone, yeah.
11
         Q. And, the basis of your calling -- you
12
     called them?
13       A. Yes.
14
         Q. What was the purpose for you calling
15
     them?
16
         A. To let them know that the engine was
17
     overheating and if they had any input of what to be
18
     done.
19
         Q. And, was it during that telephone
20
     conversation that this person..
21
```

C

```
 1        A. They actually -- no, they called me
 2   back and said, "this is what we recommend."
 3        Q. "We" being the board of the church?
 4        A. I mean I don't know -- I don't think
 5   they had an official board it was just meeting,
 6   a phone call and they were of the board members
 7   that made the suggestion.
 8        Q. They didn't make the suggestion right
 9   at the time you first called them?
10        A. No.
11        Q. They called you back?
12        A. Yes.
13        Q. The same person you spoke to called you
14   back or somebody else?
15        A. The same person called me back.
16        Q. Don't remember who that was?
17        A. Dick, Dick Bowers.
18        Q. Bowers, B-O-W-E-R-S?
19        A. Yes.
20        Q. And, where does Mr. Bowers live?
21        A. He lives in ...
```

C

47

```
 1        Q.   Just the city, if you know?
 2        A.   Hagerstown.
 3        Q.   Is it called the Board of Directors, is
 4   that what it is?
 5        A.   Yes.
 6        Q.   So you talked to them twice on the
 7   telephone?
 8        A.   Yes. That's two years ago.
 9        Q.   I understand. I mean as you recall
10   today.
11        A.   Yes.
12        Q.   During either one of those telephone
13   conversations do you recall discussing
14   specifically the issue of expense, who would pay
15   for it?
16        A.   No.
17        Q.   But it is your recollection that there
18   was an understanding that the church would be
19   paying for the repairs?
20        A.   Yes.
21        Q.   That's all I have right now.
```

48

                    CROSS-EXAMINATION

BY MR. BALLENTINE:

    Q. Mr. Christy, the Board of Directors paid for all the repairs on that vehicle, is that correct?
    A. Yes.

    Q. So that was part of the deal, "we're going to give you this car and we'll pay for maintenance."
    A. Correct.

    Q. You were not required to take it to the Amoco Station, that was just a suggestion? A. Correct.

    Q. At the time this accident occurred were you on any business, official or unofficial, for the Agape Church?

    MR. FREEL: Objection as to form. Go ahead and answer.
    THE WITNESS: No.

BY MR. BALLENTINE:

    Q. Let me ask it another way. What, if

49

1   any, business were you doing for the Agape

2   Church at the time this accident occurred?

3       A. None.

4       Q. That's    I have.
            all

5                   MR. BALLENTINE:   John, you

6   have a right to read and sign the   deposition

7   after it's typed up or you can waive that right,

8   give it up. I'm   going to suggest that you read

9   and sign it. And,   if you would send me two

10  copies and I will see  that he reads and signs

11  it.

12          (Whereupon, deposition was concluded at

13  10:40 a.m.)

14          (Whereupon,  signature having not been

15  waived)

16

17

18

19

20

21

50
Tri-State Reporters, Inc.
Court Reporting • Video Services

Case 1:03-cv-00529-JKB   Document 21-2   Filed 11/06/2003   Page 8 of 8