EXHIBITS TO ACCOMPANY PLAINTIFFS' MOTION IN LIMINE AND TO PRECLUDE
EXPERT TESTIMONY

GMA INC  *Greg Manning Associates*

*.Accident Reconstruction .*
*Engineering Services*

November 7, 2000

**Ms. Courtney Brown**

Claim Representative
State Farm Mutual Automobile Insurance Company
Hagerstown Claim Office
P.O. Box 5007
Hagerstown, Maryland 21741-5007

**RE.: Claim Number˙. 20-5229-622**
**GMA Case Number: 3823**

**Dear Ms. Brown:**

In regard to the above-referenced claim, J have completed a review of the additional file
information, namely:

Police Diagram by Cpl. B.
Townes Detailed Crash
investigation Report
? Driver/Witness Statements
? Maryland State Police Death Investigation Report
? *Maryland* State Police Form 17

**Police Diagram by Cpl. B. Townes**

Although the diagram includes the notation "Drawing not to scale", the pedestrian is *illustrated
to have traveled across the entire length of the Interstate 1 overpass after being* struck. This
is not consistent with the evidence. In addition, the drawing has the Ford truck and wood
chipper entirely on the shoulder of the road. This is also not consistent with the physical
evidence.

Detailed Crash Investigation Report

1

The report has the collision occurring approximately 10 feet west of the bridge over Interstate 81. Direct measurements at the scene indicate the collision occurred about 155 feet west of the bridge.

*The report indicates a 4-foot wide shoulder prior to the bridge. in fact, the shoulder tapers from an initial width of about 10 feet, to a width of about 3 feet at th beginning of the bridge. The taper begins 174 feet from the bridge.*

*The report indicates that the Ford's rear tire was flat and that the s are tire was found tying next to it. There were no signs of any braking or skid marks of the road surface. No damages were observed on the wood chipper. The deceased was vJearing dark clothing.*

### DriverMlitness Statements

*With respect to the collision, Mr. Christy perceived nothing prior to feeling an impact to his vehicle. He indicated that he was traveling 60 to 65 miles per hour at the time of the impact. He did not see what his vehicle struck_*

*Mr. Herko was traveling east on Interstate 70 when he saw a man Pad lost a wheel. Herko turned around at the next exit and while traveling west on 1-70, gain observed the man kneeling next to his truck. Herko turned around at the next exit an stopped at the truck on the eastbound side of 1-70. He did not observe the man at the time e stopped and later saw him lying on the road further up the highway.*

*Maryland State Police Death* **Investigation Report**

*The report indicates that the pedestrian was struck while standing/kneeling on the travel portion of the roadway*

*Maryland State Police Form 17*

*This form includes a summary of the collision indicating that Ford operator stopped due to a left rear flat tire. The truck was stopped on the white line along the south edge of eastbound interstate 70. The collision is noted to have occurred in lane two.*

*The recent information contained in and noted in the above documents is consistent with evidence reviewed to dale. As such, GMA's findings as set forth in our May 31, 2000, and June 30, 2000 reports, remain unaltered.*

*If any questions arise, do  not hesitate to call me.*



**Gregory M. Manning** *Accident Recorxstructionist*
*GMA*

**GMKA**    *Greg Manning Associates*


*A Professional Corporation*

*.Accident Reconstruction Manning .Engineering Services*


*June 30, 2000*

**Ms. Courtney Brown**
*Claim Representative*
*State    Farm    Insurance*
*Company P.O. Box 5007*
*Hagerstown, Maryland 21741-5007*

**RE: Claim Number: 20-5229-**
**522 GMA Case**
**Number: 3823**


**Dear Ms. Brown:**

*In regard to the above claim, ! have examined the thirty-eight, 4"x 6" color police photographs*
*of the collision scene. In the. photographs; the positions of the Ford F-150, the wood chipper*
*and the pedestrian are consistent with the positions of the paint m rks documented during*
*GMA's May 18, 2000 examination of the scene. Based on this consistency, the findings set*
*forth in GMA's May 31, 2000 report remain unaltered.*

*The paved shoulder is 9'/2-feet wide in the immediate area of the Ford F-150 truck. This would*
*have allowed the Ford operator to position the right side of his vehicle close to the guardrail;*
*leaving an approximate 3-foot lateral space between the left side of the Ford and the right*
*travel lane. Such positioning would have prevented the Ford operator from placing himself*
*in the travel lane during his maintenance activities. The impudent lateral positioning of the*
*Ford directly contributed to exposure of its operator to interstate traffic. The Ford operator*

3

*placed himself within the right travel lane of the interstate highway and thereby directly contributed to the cause of the collision.*

*Iff any questions should arise, please do not hesitate to contact me directly.*

Respectfully submitted,

**G r e g o r y    M . Manning** *Accident Reconstructionist GMA*

4

# GMC inc . Greg Manning

## A s s o c i a t e s
### <u>CSC</u>

A   professional
Corporation

. A c c i d e n t     R e c o n s t r u c t i o n
*Gregory Manning*

.    E n g i n e e r i n g     S e r v i c e s
*President*

May 31, 2000

**Ms. Courtney Brown**

State Farm
Insurance Company
Hagerstown   Claim
Office P.O. Box 5007

Hagerstown, Maryland 21741-5007

**RE: Claim Number: 20-**

**5229-522 GMA
Case Number:
3823**

**Dear Ms. Brown:**

In regard to the above claim, I have completed a review and evaluation of the following information and materials:

? Maryland Motor'Vehicle Accident Report

Photographs of the Honda Civic

? Photographs of the Ford F-150

? Photographs of the Bandit Chipper

? Photographs of the Collision Scene

? Recorded Statements of John Christy

? Examination of the Honda Civic

? Examination of the Collision Scene

? Videotape of NBC Channel 25 News Broadcast

**BACKGROUND**

**Maryland Motor Vehicle Accident Report**

The accident report lists the date, time and location of the collision along with .a description of the involved vehicles, the Honda operator and the pedestrian. It was reported that the Ford was parked on eastbound Interstate 70, at the bridge over Interstate 81. The Ford operator was apparently changing the Ford's left rear tire. The Ford was barely contained within the slow shoulder. The Ford operator was in lane number 2. The Honda was traveling eastbound on Interstate 70. The Honda struck the extreme left rear of the Ford and then struck the pedestrian. The pedestrian sustained fatal injuries.*The roadway was reported to be straight and level with no defects. It was raining and the road surface was wet. The posted speed limit was 6.5 miles per hour. The Ford was parked and the pedestrian was reported to have been working on the vehicle. The Honda was moving at a constant speed.*

***Photographs of the Honda Civic***

*Photographs of the Honda show impact damages at the front right and right side. The visible tires show evidence of orange paint overspray.*

***Photographs of the Ford F-150***

*The Ford photographs show contact damage beginning at the left rear corner. The damage extends forward to the area just in front of the left rear wheel. The lateral contact overlap appears to be on the order of a few inches at the extreme left rear corner. The Ford's left front tire shows evidence of overspray from orange paint.*

***Photographs of the Bandit Chipper***

*The Bandit chipper is seen positioned to the front of the Ford. The vehicle is designed on a single axle, semi-trailer chassis. The left tire sidewall contains orange paint overspray.*

***Photographs of the Collision Scene***

*The photographs of the collision scene show the area of the incident. Orange paint markings are seen on the right paved shoulder at various locations in the immediate vicinity of Mile Marker 26.*

***Recorded Statements of. John Christy***

*John Christy was the operator of the Honda at the time of the collision. He stated that the road was wett from a slight rainfall. He was traveling between 60 and 65 miles per hour in the right lane. He felt the passenger side of his vehicle strike something. He pulled off the road as he reached a safe location. He stated that he doesn't remember traveling off the road onto the adjacent rumble strip. He did not see the parked Ford or the pedestrian.*

***Examination of the Honda Civic***

*The Honda Civic was examined on May 18, 2000. The condition of the vehicle was documented with regard to damages resulting from direct contact with the Ford and pedestrian.' At the time of the examination, the Honda's front bumper and bumper cover were missing from the vehicle, along with the right headlamp, turn signal and side marker assemblies. Photographs of the Honda are included in Appendix A.*

***Examination of the Collision Scene***

*The scene of the collision was also documented on May 18, 2000. Police references and orange paint markings were located and measured along with the design geometry of the roadway. Collision scene photographs are included in Appendix B.*

### *Videotape of NBC Channel 25 News Broadcast*

*The videotape of the NBC Channel 25 News broadcast shows the Ford in its rest position on the right shoulder of eastbound Interstate 70. The Ford's left front tire is seen atop the white edgeline. The rear tail gate and cap door are in an open position. The chipper trailer is positioned directly behind the Ford. The Ford and chipper are positioned a significant distance from the south guardrail. The Ford's left rear tire appears to be removed from the vehicle Contact damages are seen along the Ford's left rear corner and side.*

### *ANALYSIS*

### *Road Geometry & Physical Evidence*

*In the area of the collision, eastbound Interstate 70 provides two travel lanes. The left lane is $11^1/_2$ feet in width. The right lane is 12 feet wide. The right side, white edge line is 7 inches wide and separates the travel lanes from a 10-foot wide paved shoulder. A guardrail aligns the south edge of the paved shoulder. The shoulder contains a 16-inch wide rumble strip, the north edge of which is 1-foot from the edge line. The shoulder begins to narrow at a point approximately 174 feet from the west edge of the Interstate 81 bridge overpass. At the overpass, the shoulder width is 33 feet, 2 inches.*

*Six orange paint marks were observed on the edge line and shoulder. The following diagram shows the longitudinal position of the paint marks with respect to the west edge of the Interstate 81 overpass:*





*orange paint marks* *

*The distance between paint marks B & C is 11 feet. Specifications indicate the Ford's wheelbase to be 11 feet, 1 inch. Therefore, these marks are consistent with the rest position of or truck's wheels. In the area of these paint marks, the width of the paved shoulder was measured to be $9^1/_2$ feet. The published maximum width of the Ford truck*

is 6 feet, 7 inches. The paint mark at point B is laterally positioned on the south edge of the white edgeline. Although the Ford's˙left rear tire was removed from the vehicle at the time of impact, the position of the associated paint mark appears to be consistent with the location of the Ford in the NBC News videotape footage.

Seven additional paint marks were observed along a 13-foot section of the paved shoulder - 42 to 55 feet from the Interstate 81 overpass. The location of these paint markings appear consistent with the rest position of the pedestrian as indicated in the police report diagram.

### Damage & Impact Orientation

The vehicle damages suggest a lateral overlap of a few inches at the time of the Honda's initial contact with the rear of the Ford. The condition of the Bandit chipper trailer suggests that it was not contacted by the Honda. Although the chipper trailer was not available for direct examination, the associated paint markings on the shoulder suggest its width to be orr the order of 5 feet - 1-foot narrower than the Ford truck. Therefore, lateral overlap of the Honda of a few inches could physically have occurred without direct contact with the chipper.

The right front of the Honda exhibits physical evidence of direct contact with the pedestrian in the form of deformation and contact striations on the engine hood. This evidence is centered about 10 to 12 inches to the right of the Honda's longitudinal centerline. Graphically correlating the observed contact evidence indicates that the pedestrian was positioned within the right travel lane and centered about 14 to 16 inches north of the north edge of the white edge line at the time of impact by the Honda.

The vertical extent of pedestrian contact on the front of the Honda suggests that the pedestrian was not standing at the time of impact. The contacted area was confined to the front portion of the Honda's engine hood, with no windshield damage or contact noted. This observed vertical damage pattern would not be expected to result from an impact with a standing pedestrian at Interstate speeds. In addition, the condition of the Honda's associated body parts suggests that some degree of pedestrian contact with the vehicle's undercarriage did occur.

If any questions should arise, please do not hesitate to contact me directly.

Re pectfully

**Gregory W Manning** Accident Reconstructionist GMA

9

10