IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

NANCY I. CLINE, et al.

    Plaintiffs

v.                                                              Case No. JFM-03-CV-529

AGAPE HARVESTER CHURCH, INC., et al.

    Defendants

## PLAINTIFFS' MOTION IN LIMINE AND TO PRECLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESSES

    Plaintiffs, by Leonard A. Orman, P.A., one of their attorneys, move in limine and to preclude the testimony of individuals named by Defendants, as their expert witnesses in this case and for reasons say:

    1. Glen H. Cline, Jr., deceased sustained serious personal injuries and resultant death on April 18, 2000 as the result of being struck by a motor vehicle owned by defendant, Agape Harvester Church and operated by its agent, servant or employee, John James Christy in an easterly direction on Interstate 70 at or near the bridge over Interstate 81.

    2. The collision took place because Mr. Christy was turned around speaking to his children and was not paying attention to the roadway in front of his vehicle. Mr. Christy's vehicle first struck Mr. Cline's vehicle and then Mr. Cline who had pulled his vehicle onto the right shoulder of the roadway because of a flat tire. Mr. Cline was apparently attempting to change his flat tire when he was struck and killed.

    4. Disputes in this case include whether the Cline vehicle was totally off of the

1

roadway, the location of Mr. Cline when he was struck by the Christy driven vehicle, the distance of the Cline vehicle from the bridge, the overhead lighting and the lighting which Mr. Cline had set out behind his vehicle before the subject incident and the location of the Cline vehicle at the time of the subject incident.

    4. Plaintiffs' Interrogatory No. 7 requested:

State the name and addresses of all individuals whom you intend to call as expert witnesses, stating name, address, area of expertise, educational background, professional experience, publications, honors and certifications, specialty or specialities and the number and places the expert has testified as an expert, specify all documents which the expert has reviewed in regards to this case, state the subject matter on which the expert is expected to testify, state the substance of the expert's findings and opinons to which the expert is expected to testify and give a summary of the grounds for such opinions and produce any written report made by the expert concerning those findings and opinions. Set out in detail the amount of and what portion of said expert's income is generated from reviewing documents and giving opinions, providing testimony, and conferencing with counsel in each of the past five years and state what portion of expert's total income is generated from such work. Failure to fully answer each part of the question (which is patterned on rule 2-402(e)) will result in an objection and a motion to strike any testimony from the stand that was not provided in the answer.

    Defendants response was :

This Defendant intends to call Greg Manning as an expert witness in the field of accident reconstruction. A copy of his report has been previously provided to Plaintiff's counsel. In preparing his report, Mr. Manning relied on the investigating police officer's report and diagram, driver's witness statements, the autopsy reports, the photographs that he took as well as the photographs taken by the investigating police officer. The information regarding Mr. Manning's income is being sought and will be provided.... Defendant reserves the right to rely on the testimony of any expert witness named and/or called by Plaintiff's in this case. Finally Defendant reserves the right to call Maryland State Trooper Robert Fraley, as an expert in the field of accident reconstruction. Trooper Fraley has previously been deposed and the information called for by these Interrogatories is contained in the transcript of his deposition, which has been provided to Plaintiff's counsel.

    5.. The grounds for Plaintiffs' Motion in Limine and to Preclude are multiple in that

2

the testimony of the expert witnesses are not admissible under Federal Rule 702, that said witnesses has not provided all of the information required by Federal Rule 26(a)(2)(B) and all the information requested by Plaintiffs Interrogatory No. 7 to Defendants.

      6. The court's scheduling order of May 28, 2003 required that defendants provide complete Rule 25 (a)(2)(B) disclosures by the named experts.  None of the requested information was provided in regards to Trooper Fraley and his deposition testimony did not provide most of the requested information..  Although the report of Mr. Manning was submitted timely, he failed to submit the most important information required by the Rule 26 (a)(2)(B)  A copy of Mr, Manning's initial and supplemental reports are attached hereto

## MEMORANDUM OF BASIS FOR MOTION

### I. Admissibility of Expert Testimony- Daubert

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence.  Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

FED. R. EVID. 702.  Under Rule 702, the trial judge has broad discretion in determining whether to admit or exclude expert testimony.  See e.g. Patterson v. McLean Credit Union, 805 F.2d 1143, 1147 (4th Cir. 1986), modified on other grounds, 491 U.S. 164 (1989) (holding that the lower court's finding that the proffered expert testimony would not be helpful to the jury was not an abuse of discretion).  The trial judge's decision to admit or

exclude expert testimony shall only be reversed on a finding of abuse of discretion. General Electric Co. v. Joiner, 118 S.Ct. 512, 517 (1997).

The trial court must act as the gatekeeper to the presentation of expert testimony. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). The two most critical aspects of this function is determining whether the proffered evidence is reliable and whether it will assist the trier of fact. Id at 593-94. The determination whether the proffered evidence will assist the trier of fact requires a fact intensive inquiry. In accident cases, for example, the trial judge has been given broad discretion to determine whether to admit or exclude the testimony of an accident reconstructionist. See e.g. Seese v. Volkswagenwerk A.G., 648 F.2d 833, 844-45 (3rd Cir. 1981) (affirming the lower court's admission of the testimony of an accident reconstructionist and stating that the admission of expert testimony rests with the sound discretion of the district court); Dallas & Mavis Forwarding Co., Inc. v. Stegall, 659 F.2d 721, 722 (6th Cir. 1981) (affirming the lower court's exclusion of the opinion of an accidentologist because it was not based on any physical evidence and was derived primarily from the statement of a biased eyewitness). Deference is given to the trial judge in such matters because the trial court is in a far better position than the appellate court to determine if such evidence is helpful. See e.g. In re Air Crash Disaster at New Orleans, Louisiana, 795 F.2d 1230, 1233 (5th Cir. 1986) (noting that deference to the trial judge is the result of the superior opportunity of the lower court to determine the competence of the expert and the proffered testimony's helpfulness to the jury).

4

One factor in making the determination of helpfulness to the trier of fact is whether the proposed testimony involves highly specialized and technical matters or whether the proposed testimony is within the knowledge of the average juror. See e.g. Patterson v. McLean Credit Union, 805 F.2d 1143, 1147 (4th Cir. 1986), modified on other grounds, 491 U.S. 164 (1989) (affirming exclusion of testimony of expert in personnel administration because qualifications of clerical employee did not raise highly technical or complicated issues); Kopf v. Skyrm, 993 F.2d 374, 378 (4th Cir. 1993) (reversing the trial court for excluding expert testimony as to police procedure regarding the proper use of police dogs because such knowledge is obscure and specialized). It is not considered helpful to the trier of fact to permit expert testimony which primarily consists of the rendering of legal conclusions. See Specht v. Jensen, 853 F.2d 805, 806-09 (10th Cir. 1988) (reversing the decision of the lower court to permit the jury to hear testimony from an attorney regarding whether a certain set of facts constituted a search within the meaning of the Fourth Amendment).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court overturned the 1923 case of Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923), which had previously governed the admissibility of scientific expert testimony. In Frye, it was held that in order for expert scientific testimony to be admissible, the principal or technique upon which the testimony was based had to be generally accepted in the field in which it belonged. Id. The Daubert Court, however, held that Frye did not survive the passage of Rule 702, and that "general acceptance" was no longer a requirement for the

admissibility of scientific evidence. Daubert, 509 U.S. at 589. The Daubert Court assigned trial judges the role of gatekeeper in determining the admissibility of expert testimony. The Court stated that upon the proffer of expert scientific testimony, the trial judge must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Id. at 592. This requires the judge to perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93. The Court declined to set out a definitive checklist required to make this determination, but mentioned four factors that are important to the inquiry: whether the theory or technique can be and has been tested; whether the theory or technique has been subjected to peer review and publication; the known or potential rate of error; and the general acceptance of the theory or technique in the relevant scientific community. Id. at 593-94.

On remand from the Supreme Court, the United States Court of Appeals for the Ninth Circuit stated that an additional important factor in conducting this inquiry is "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1317 (9th Cir. 1995). The court indicated that testimony relating to research conducted independent of the litigation was an important piece of proof that the research was based on good science. Id. Daubert applies

6

broadly to the admissibility of expert testimony. Some courts held that the <u>Daubert</u> analysis was applicable to a broad range of expert testimony. See e.g. <u>Tyus v. Urban Search Management</u>, 102 F.3d 256, 263 (7th Cir. 1996) (holding that <u>Daubert</u> framework is applicable to all kinds of expert testimony and is not confined simply to novel scientific theories or methodologies); <u>Watkins v. Telsmith, Inc.</u>, 121 F.3d 984, 988-91 (5th Cir. 1997) (concluding that <u>Daubert</u> analysis is applicable to the evaluation of the experience of mechanical engineer and his use of common engineering principles). Other courts, however, interpreted <u>Daubert</u> in a more restrictive way, and confined its applicability to cases involving novel scientific expert testimony. See <u>Thornton v. Caterpillar, Inc.</u>, 951 F. Supp. 575, 578 (D.S.C. 1997) (holding that <u>Daubert</u>'s applicability should be limited to controversial and novel scientific evidence).

The United States Supreme Court settled this issue in <u>Kumho Tire Company, Ltd. v. Carmichael</u>, No. 97-1709, 1999 WL 152275 (U.S. March 23, 1999). In <u>Carmichael</u>, the Court held that the obligation of a trial judge to act as a gatekeeper to the admissibility of expert testimony and to ensure that such testimony is both relevant and reliable applies to all expert matters described in Rule 702, not just scientific expert testimony. <u>Id</u>. at *5-6. The Court further stated that "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline." <u>Id</u>. at *6 (quoting <u>Daubert</u>, 509 U.S. at 592). The Court emphasized that the inquiry to be conducted by the trial judge is a flexible one. <u>Id</u>.

7

Whether or not the specific factors listed in Daubert are reasonable measures of the reliability of expert testimony is a question that "the law grants the trial judge broad latitude to determine." Id. at *6-7. Carmichael, therefore, broadens and clarifies Daubert's grant of a gatekeeping role to trial judges and emphasizes the wide discretion trial judges enjoy in determining the admissibility of all types of expert testimony.

Whether or not the factors specifically listed in Daubert are helpful in the court's determination of admissibility, the trial judge must determine whether the witness purporting to be an expert qualifies by knowledge, skill, training, or otherwise. FED. R. EVID. 702. If the proposed testimony is outside the experience of the person testifying then the proposed testimony should be excluded. See Rosado v. Deters, 5 F.3d 119, 124 (5th Cir. 1993) (affirming the lower court's exclusion of the testimony of an accident reconstructionist who had last qualified in the field more than twenty years before). Multiple factors are involved in determining whether a witness is qualified to testify. See U.S. v. Davis, 40 F.3d 1069, 1075 (10th Cir. 1992) (noting that the lower court reviewed the experience, education, and training of a witness before determining that the witness was qualified to review a technique for obtaining DNA evidence). In certain circumstances, a witness may have knowledge in a certain field, but the knowledge may be too general to permit the witness to testify about the specifics of a case. See Stachniak v. Hayes, 989 F.2d 914, 924-25 (7th Cir. 1993) (excluding the testimony of a professor at a university police training institute in reference to the reasonableness of the actions of a police officer).

Federal Rule of Evidence 703 also plays a role in the determination of the admissibility of expert testimony. Rule 703 states as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

FED. R. EVID. 703. Rule 703 permits expert witnesses to testify based on their reliance on studies and other data which might otherwise be hearsay, as long as the data relied upon by the expert is reasonably relied upon by experts in the field. Id. Rule 703, therefore, like Rule 702, grants trial judges a gatekeeping role in determining whether the data relied upon by the expert is reliable. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 748-49 (3rd Cir. 1994) (stating that Rule 703 requires judges to assess whether there are good grounds for the expert witness to rely on the underlying data). The determination of the reliability of the sources used by experts must be made on a case by case basis. See Soden v. Freightliner Corp., 714 F.2d 498, 502-03 (5th Cir. 1983). Effectively, the court must determine whether the expert's sources are reliable, and, if they are not, the court may exclude the expert's testimony.

The trial judge must also consider Rule 403 in determining whether to admit expert testimony. Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

> misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. Pursuant to Rule 403, the court must exclude expert testimony, even if it is otherwise admissible under Rules 702 and 703, if the probative value of the testimony is outweighed by its prejudicial effect. Kurncz v. Honda North America, Inc., 166 F.R.D. 386, 388 (W.D. Mich. 1996) (holding that all evidence must meet the requirements of Rule 403). The court's inquiry under Rule 403 is even more critical when evaluating expert testimony because of the powerful yet misleading effect of certain types of expert testimony. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 595 (1993).

In addition to the above Daubert law, the Maryland case of Carter v. Shoppers Food Warehouse MD Corporation, 126 Md. App. 147, 727 A.2d 958 provides that expert testimony is not necessary when it relates to matters of which the jurors would be aware by virtue of common knowledge. An expert's opinion has no probative force unless there is sufficient basis upon which to support his conclusions.

### Admissibility of Evidence - Violation of Federal Rule 26(a)(2)(B)

Federal Rule of Evidence 26(a)(2)(B) requires that a party shall disclose, with respect to a witness who is retained or specially employed to provide expert testimony and provide a written report prepared and signed by the witness which report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore as well as other information considered by the witness.

### Obtaining information related to an expert's income

10

In this case, plaintiffs inquired of Mr. Manning, regarding his financial history. This information was requested in order for plaintiff to show that Mr. Manning is a "hired gun" and "professional witnesses". In order to prove the unreliability and bias of the expert because of his financial interest in providing testimony and opinions for the benefit of the parties which hire him, plaintiffs requested the financial information as is set out above in interrogatory No. 7. . The proper way to obtain this information is for the expert to provide information and/or documents which state how much the expert has made in the past for providing reports and testimony on a for hire basis and to compare that income with his total income. See <u>Wrobleski v. Nor De Lara,</u> 708 A.2d 1086, 353 Md 509 (1999).

**Plaintiffs' interrogatories to defendants**

In Plaintiff's interrogatory No. 7, set out above was submitted to defendants, who were asked to produce information regarding their expert witnesses including<u>, to state the subject matter on which the expert is expected to testify, to provide the substance of the expert's findings and opinions to which the expert is e expected to testify and to give a </u>

<u>summary of the grounds for such opinions.</u>

**GREGORY MANNING-- Defendants' Accident Reconstructionist**

Mr. Manning claims to be an expert in the field of accident reconstruction   Mr. Manning has submitted a written report with supplements (copies of which are attached hereto).  He was hired by defense counsel to reconstruct the subject accident.  Mr. Manning apparently did not speak to any of the witnesses.  He does have photographs of the accident scene taken after the accident.  Mr. Manning's reports and defendants' answer to interrogatory No. 7 clearly specify that his accident reconstruction in this case including his opinions are based  on witness statements, police officer's report or statement and  diagram as well as autopsy report and photographs.  No one actually saw the subject accident but one witness passed the disabled vehicle and Mr. Cline before Mr. Christy ran them over.

As can be seen in Manning's reports, he has not really established any opinion.but suppositions in that he states: (p. 4 of report)

"the vehicle damages <u>suggest</u> a lateral overlap of a few inches...the condition of the Bandit chipper trailer <u>suggests</u> that it was not contacted by the Honda...although the chipper trailer was not available for direct examinaation, the associated paint markings on the shoulder <u>suggest</u> its width to be......therefore, lateral overlap of the Honda of a few inches <u>could</u> physically have occurred without direct contact with the chipper.  Graphically correlating the observed evidence <u>indicates</u> that the pedestrian was positioned within the right travel lane and centered about 14-16 inches north of the north edge of the whide edge line at the time of impact by the Honda...The vertical extent of pedestrian contact on the front of the Honda <u>suggests</u> that the pedestrian was not standing at the time of the impact...the condition of the Honda's associated body parts <u>suggests</u> that some degree of pedestrian contact with the vehicle's undercarriage did occur."

Defendants and Mr. Manning have produced no opinions as required by the Rules and requested by Interrogatory No. 7.  In addition, even if his report could be considered to

12

contain opinions with reasonable degree of scientific certainty, defendants and Mr. Manning have produced no summary of grounds for such opinions. Defendants and Mr. Manning have not produced all of the financial information and comparisons as requested by plaintiffs.

The lynchpin of Manning's opinion and the basis for defendant's contention that he can assist the jury in understanding this case seems to be his unreliable supposition/opinion that Mr. Cline was bending down and attempting to change a tire at the time of the subject incident, that all or part of Mr. Cline's body was in the roadway and that the Cline vehicle was further away from the bridge than determined by the inestigating police officer. The actual path of movement of the Christy vehicle is in little dispute including that he strayed over onto the shoulder of the roadway striking Mr. Cline's vehicle before striking Mr. Cline and this is apparently not a focus of Manning's suppositions. Mr. Christy's failure to observe conditions in front of his vehicle is also not a focus of Mr. Manning's supposition.

In a prior deposition given by Mr. Manning in the case of <u>Bange v. Smith</u>, in the Circuit Court for Frederick County, Mr. Manning testified under oath and admitted on August 10, 1992 on pages 65 to 66:

> "In reconstruction, it's generally my experience that I cannot rely on witness statemens or depositions in investigations. In this case, you've got two people that say that Smith was driving southbound in the southbound lane and that Bange was driving south- or northbound in the southbound lane , and you got another witness that says it was Smith that was driving on the wrong side of the road. So what am I supposed to do, pick and choose and say which of these two guys and not that one?
> Q. You discounted them all?
> A. I recorded them, because that was my job to record them But I wrote people

13

tickets based on what I thought happened, not on–
Q. I understand that. but it's your opinion, as I understand it, that in the field of accident reconstruction, the standard of your industry and the way to go with accident reconstruction is to ignore the statements of the eyewitnesses to an accident and not to rely on them at all in conducting your investigation or in reaching any conclusion?
MR. BROWN. Objection. You can answer that.
A. That's correct. **Accident reconstruction has to be independent of eyewitness testimony**

In the present case, it appears that Mr. Manning believes it is to his client's benefit if he can render opinions based even partially on witness testimony even though his suppositions are contrary to determination made by the investigating police officer whose findings Mr. Manning disputes including the location of Mr. Cline's vehicle at time of the subject incident, Mr. Manning was previously asked how he separates good witness testimony from the bad testimony and he stated, among other comments, "So what I've done is reconstruct this accident based on each of their testimonies, <u>and its up to the trier of the fact to figure it out. I'm not here to figure it out.</u> I'm here only to proffer testimony based on what I've read and what I've gleaned from what I've read" (pages 100-101)

If it is up to the fact finder to figure out the validity of witnesses, then why do we need Mr. Manning and what does he add to these proceedings.

Mr. Manning goes so far out on the limb with his opinions and assertions that a judge in Morgantown, West Virginia, rejected his opinions in a case and threw it out (page 36-40 of Mr. Manning's deposition taken in the case of <u>McKitis v. DeFazio)</u>) because it was confusing and abstract.

For the same reason, Magistrate Judge, Paul Grimm, rejected Mr. Manning's opinions in the case of <u>McKitis v. DeFazio, et al</u>. , United States District Court for the

14

District of Maryland, Case No. S-98-3027 and prevented his testimony.

Mr. Manning apparently is attempting to justify his fee by providing supposiitons based on matters which he has admitted in the past as having no scientific value.  He is giving suppositions based on witness statements and police findings with which he partially disagrees after he has already testified under oath that you cannot reconstruct an accident using even eye witness testimony. See above.

In an attempt to relieve Mr. Christy, who violated the Maryland  law by failing to keep and maintain a sufficent and proper lookout, driving his vehicle onto the shoulder of the road and failing to observe the presence of Mr. Cline's vehicle and Mr. Cline (even though he was clearly visible to the only other known motorist)  There is  no scientific or factual background to Mr. Manning's suppositions.

It is up to the trier of the fact in this case, (the jury) to determine the validity of the witnesses recollection and the observations of the investigating police officer.  Mr. Manning's suppositions have no probative force and there is absolutely no basis to support his suppositions which do not amount to opinions.

Manning's lack of value to the jury's determination of this case is compounded by his bias in picking and choosing what to accept from the report of the investigating police officer and his selection or disregarding of other aspects of the police findings. The factual basis for Manning's opinions are wanting.  Mr. Manning's suppositions are not relevant, cannot be reliable because they lack factual basis and their certainty are in question.

As Daubert held, and Carmichael reemphasized, the trial judge's role as a gatekeeper to the admissibility of expert testimony requires a determination that the

proffered testimony is relevant and reliable. There are several reasons why Manning's proposed testimony should not be admitted. As an initial matter, his methodology in reconstructing the accident was highly suspect: in that he personally failed to interview any of the witnesses to the accident; he picked and chose what he wanted from the police report, he created suppositions which he previously confirmed are not reliable because his opinions were based partially on witness statements and he did not account for some of the important surrounding circumstances at the time of the accident, such as the presence of other vehicles on the roadway

Manning's report ultimately arrives at suppositions similar to some of the assertions made by defense counsel. This leaves the impression that the purpose of Manning's report was to justify defendants' assertions, rather than to conduct an even handed analysis. The foregoing limits the probative value and validity of Manning's testimony. As such, the testimony of Manning should also be excluded pursuant to Rule 403. He should not be permitted to testify before the jury, clothed in the apparent reliability of an expert, without sufficient technical knowledge or appropriate methodology.

Mr. Manning was requested to and required to produce information regarding his income from his accident reconstruction business as well as his total income so that Plaintiff could attack his bias and compare his defense/insurance related cases to his total income. Despite his obligation to submit this information, Mr. Manningcontinues to fail to respond to requestsor to provide all of the information and his failure to provide this information should also preclude him from testifying.

For the reasons asserted above this court should issue and order prohibiting Mr.

Manning from testifying on behalf of the defendants.

In addition to the above, defendants should be precluded from calling Trooper Fraley as an expert because they have failed to produce the information requested by the Rules and by plaintiffs' interrogatory No. 7.

WHEREFORE, Plaintiffs request that their Motion in Limine and to Preclude Testimony by Defendants' Expert Witnesses be granted.

_____
Leonard A. Orman, P.A.
26 South Street
Baltimore, Maryland 21202
(410) 962-0400
Attorney for Plaintiffs

Copy of the foregoing was mailed this 11th day of November, 2003 to Lawrence E. Ballantine, Esq,. 1 West Pennsylvania Avenue, Suite 500, Towson, MD 21204, attorney for Defendants.

_____
Leonard A. Orman, P.A.

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

NANCY I. CLINE, et al.

    Plaintiffs

v.                                                            Case No. JFM-03-CV-529

AGAPE HARVESTER CHURCH, INC., et al.

    Defendants

## **ORDER**

After consideration of Plaintiffs' Motion in Limine and to Preclude Expert Testimony and Defendants' Response thereto, it is this _____ day of _____, 2003 by the United States District Court for the District of Maryland

    ORDERED that Greg Manning and Trooper Robert Fraley shall not be permited to testify in this case as expert witnesses.

                                                   _____
                                                              JUDGE

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

NANCY I. CLINE, et al.

    Plaintiffs

v.                                                        Case No. JFM-03-CV-529

AGAPE HARVESTER CHURCH, INC., et al.

    Defendants

## REQUEST FOR HEARING

Plaintiffs request a hearing on their Motion in Limine and to Preclude Expert Testimony.

                                                              _____
                                                               Leonard A. Orman, P.A.
                                                               26 South Street
                                                               Baltimore, MD 21202
                                                              410-962-0400
                                                              Attorney for Plaintiffs